Faye M. MORANKO, Admin. of the
Estate of Richard L. Moranko,
Deceased, Appellant

v.

DOWNS RACING LP, d/b/a Mohegan
Sun at Pocono Downs, Appellee.

Superior Court of Pennsylvania.

Argued Dec. 3, 2014.
Filed June 10, 2015.

Jamie J. Anzalone, Wilkes Barre, for appellant.

David E. Heisler, Scranton, for appellee.

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., BENDER, P.J.E., PANELLA, J., DONOHUE, J., SHOGAN, J., MUNDY, J., OLSON, J., OTT, J.

OPINION BY PANELLA, J.

Appellant, Faye M. Moranko, Administratrix of the Estate of Richard L. Moranko, deceased, appeals from the order entered January 4, 2013, by the Honorable William H. Amesbury, Court of Common Pleas of Luzerne County, which entered summary judgment in favor of Appellee, Downs Racing LP, d/b/a Mohegan Sun at Pocono Downs ("Mohegan Sun"). This case raises an issue of first impression in this Commonwealth regarding the duty and ultimate liability of a valet service when an automobile is returned to an allegedly intoxicated patron. We find no such duty exists under Pennsylvania law. Accordingly, we affirm the entry of summary judgment.

Moranko instituted this wrongful death and survival action by way of Complaint filed August 9, 2011. Moranko alleges

that on January 15, 2011, her son, Richard Moranko (the "decedent"), consumed "copious amounts of alcohol" while at Mohegan Sun. Complaint, 8/9/11 at ¶ 7. Thereafter, at approximately 8:30 p.m., the decedent retrieved his vehicle from valet services, despite his alleged visible intoxication. *See id.*, at ¶¶ 8–9. After the decedent departed Mohegan Sun, he was involved in an automobile accident resulting in his death. *See id.*, at ¶¶ 12–16. Moranko argues in her Complaint that Mohegan Sun was negligent in serving the decedent alcoholic beverages and in handing over the keys to his vehicle when he was allegedly visibly intoxicated.

On July 30, 2012, following the completion of discovery, Mohegan Sun filed a motion for summary judgment. Mohegan Sun argued, among other things, that Moranko had failed to produce sufficient evidence that it served the decedent alcoholic beverages while he was visibly intoxicated and that there is no cause of action in Pennsylvania allowing recovery against a valet service for giving a visibly intoxicated customer the keys to his vehicle. The trial court granted the motion and entered summary judgment in favor of Mohegan Sun. Moranko appealed. A panel of this Court issued an opinion affirming the grant of summary judgment. *See Moranko v. Downs Racing LP*, 192 MDA 2013 (Pa.Super., filed 6/24/2014) (withdrawn). Judge Mundy filed a dissenting opinion. Moranko sought reargument, which this Court granted. After the filing of supplemental briefs, this matter is ready for disposition.

 Moranko argues that "the trial court erred in granting [Mohegan Sun's] motion for summary judgment when there exists genuine issues of material fact and [Mohegan Sun] was not entitled to judgment as a matter of law." Appellant's Brief, at 3. We review a challenge to the entry of summary judgment as follows.

[We] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. *See* Pa.R.C.P., Rule 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*E.R. Linde Const. Corp. v. Goodwin*, 68 A.3d 346, 349 (Pa.Super.2013) (citation omitted).

Herein, although Moranko devotes much of her brief to arguing the evidence supports a finding that the decedent was visibly intoxicated while at Mohegan Sun, we again note that our standard when reviewing a trial court's entry of summary judgment requires that we resolve all doubts as to the existence of a genuine issue of material fact in her favor. *See id.* Therefore, for the purposes of our analysis, we will accept Moranko's contention and analyze the issues with the understanding that the decedent was visibly intoxicated. The crux of this case then hinges upon whether

Pennsylvania law imposes a duty upon Mohegan Sun and its valet service to withhold the keys to a vehicle if the owner appears visibly intoxicated. We find that it does not.

It is axiomatic that the elements of a negligence-based cause of action are a duty, a breach of that duty, a causal relationship between the breach and the resulting injury, and actual loss. *See Wright v. Eastman*, 63 A.3d 281, 284 (Pa.Super.2013). The question of whether a duty exists, as part of a negligence claim, is a question of law, assigned in the first instance to the trial court and subject to plenary appellate review. *See Thierfelder v. Wolfert*, 617 Pa. 295, 52 A.3d 1251, 1264 (2012).

> The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the [over all] public interest in the proposed solution.

*Montagazzi v. Crisci*, 994 A.2d 626, 631 (Pa.Super.2010) (citations omitted).

"When considering the question of duty, it is necessary to determine whether a defendant is under any obligation for the benefit of the particular plaintiff ... and, unless there is a duty upon the defendant in favor of the plaintiff which has been breached, there can be no cause of action based upon negligence." *Roche v. Ugly Duckling Car Sales, Inc.*, 879 A.2d 785, 789 (Pa.Super.2005) (citation and internal quotation marks omitted).

At the outset, we note that Moranko makes no citation to the record, and we have found no evidence of record, to support her claim that Mohegan Sun served alcohol to the decedent while he was at the casino prior to the tragic accident. Moranko presents no testimony, video surveillance, or other evidence establishing that Mohegan Sun served the decedent alcohol on the casino premises.

To support her claim against the parking service, Moranko does not cite case law from any jurisdiction that imposes an affirmative duty upon the valet employed by Mohegan Sun. Rather, she relies upon general concepts of "ordinary care" and public policy to create such a duty. More specifically, Moranko relies upon Section 324A of the Restatement (Second) of Torts, Liability to Third Person for Negligent Performance of Undertaking, to support the imposition of a duty in this matter.[1] Section 324A provides as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability *to the third person* for physical harm resulting from his failure to exercise rea-

---

1. Moranko additionally cites Section 390 of the Restatement (Second) of Torts, Chattel for Use by Person Known to be Incompetent, in support of her argument. However, it appears from our review of the record that Moranko failed to raise Section 390 of the Restatement as a basis for relief in the trial court at any point in the proceedings. It is well-settled that issues raised for the first time on appeal are waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Even if we were to ignore waiver, however, we would find this issue to be without merit. As discussed in detail below, because we find that Mohegan Sun, as bailee, was duty bound to return the decedent's vehicle despite his alleged intoxication, the negligent entrustment theory of tort liability does not apply to this case.

sonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965) (emphasis added).

The comments to Section 324A of the Restatement makes clear that "[t]his section deals with the liability to third persons." *Id.*, Comment a. Here, Moranko's claims do not invoke third party liability, but rather concern an alleged failure to act resulting in direct harm to the decedent. Therefore, we do not find that Section 324A of the Restatement provides Moranko with a basis for relief.

Moranko alternatively argues that Mohegan Sun's duty is manifest in its failure to comply with internal organizational policies "designed to identify visibly intoxicated patrons and to prevent them [sic] *from the gaming floor.*" Appellant's Brief, at 16 (emphasis added). This internal policy of Mohegan Sun is aimed not at preventing their valets from withholding an automobile from a visibly intoxicated patron, but from keeping visibly intoxicated patrons from gambling on the casino gaming floor. As such, it cannot serve to place a legal duty on Mohegan Sun.

We further find Moranko's reliance on 58 Pa.Code § 501a.3(a) to be misplaced. That section provides, in pertinent part:

§ **501a.3. Employee training program.**

(a) The employee training program required under § 501a.2(d)(5) (relating to compulsive and problem gaming plan) must include instruction in the following:

(1) Characteristics and symptoms of compulsive behavior, including compulsive and problem gambling.

. . .

(6) Procedures designed to prevent serving alcohol to visibly intoxicated gaming patrons.

(7) Procedures designed to prevent persons from gaming after having been determined to be visibly intoxicated.

. . .

58 Pa.Code § 501a.3(a). To the extent this section mandates implementation of employee training procedures to prohibit serving alcohol to visibly intoxicated gaming patrons, this internal policy of Mohegan Sun is not aimed at requiring valets to withhold an automobile.[2]

▆▆ Moranko next argues that Section 323 of the Restatement (Second) Torts is applicable. Moranko did not raise this in her response to the motion for summary judgment, in her brief in support thereof, nor did she even raise this claim in the appellate brief originally filed in this appeal. Moranko raises this argument for the *first* time on appeal in her supplemental brief submitted on reargument. We find it waived. *See generally* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

As noted, Moranko did not raise Section 323 in her response to Mohegan Sun's motion for summary judgment. "[A]rguments not raised initially before the trial court in opposition to summary judgment

**2.** Significantly, Moranko's focus on policies prohibiting the service of alcohol to intoxicated patrons ignores a fatal defect to her argument—nowhere does Moranko cite to any evidence that Mohegan Sun served alcohol to the decedent while at the casino prior to the tragic accident.

cannot be raised for the first time on appeal." *Krentz v. Consolidated Rail Corp.*, 589 Pa. 576, 910 A.2d 20, 37 (2006) (citing *McHugh v. Proctor & Gamble*, 875 A.2d 1148, 1151 (Pa.Super.2005); *Devine v. Hutt*, 863 A.2d 1160, 1169 (Pa.Super.2004)). This canon of appellate practice comports with "our Supreme Court's efforts to promote finality, and effectuates the clear mandate of our appellate rules requiring presentation of all grounds for relief to the trial court as a predicate for appellate review." *Hutt*, 863 A.2d at 1169. *See also Keystone Bldg. Corp. v. Lincoln Sav. & Loan Ass'n*, 468 Pa. 85, 360 A.2d 191, 194 (1976) (deeming contention waived due to appellant's failure to raise it before appealing to this Court); *Commonwealth v. Dennis*, 548 Pa. 116, 695 A.2d 409, 411 (1997) (stating that "trial courts should be given the opportunity to correct an error and conserve judicial resources.").

Accordingly, we find Moranko's argument based on Section 323 of the Restatement (Second) Torts waived.

Mohegan Sun directs this Court to the Pennsylvania Supreme Court's decision in *Congini v. Portersville Valve Company*, 504 Pa. 157, 470 A.2d 515, 519 (1983), in which the Court determined that a social host who had no right of control over or ownership of an intoxicated guest's vehicle could not be held liable for negligent entrustment. The Court cited with approval the Supreme Court of Nevada's decision in *Mills v. Continental Parking Corp.*, 86 Nev. 724, 475 P.2d 673 (1970), which held that a parking lot attendant could not be liable for surrendering a vehicle to its intoxicated owner.

In *Mills*, the Nevada Supreme Court affirmed dismissal of the plaintiff's claim for wrongful death brought by the heirs of a pedestrian who was killed by a car driven by a drunk driver against the operator of a parking lot who surrendered the vehicle with knowledge of the driver's inebria-

tion. *See id.*, at 724, 475 P.2d at 674. Finding that a legal relationship of bailor-bailee is created where the parking lot attendant "collects a fee, has possession of the keys, assumes control of the car and issues a ticket to identify the car for redelivery," the Court reasoned that

> [t]he negligent entrustment theory of tort liability does not apply to the normal bailor-bailee relationship since the bailee is duty bound to surrender control of the car to the bailor upon demand or suffer a possible penalty for conversion. Indeed, if the bailee refuses to return the car at the end of the bailment it is presumed that the car was converted to him. Here, the bailment ended when [the intoxicated individual] appeared at the parking lot to reclaim possession of his car and paid for the parking services. At that moment the bailee lost right to control the car. Although the negligent entrustment theory may apply where one who has the right to control the car permits another to use it in circumstances where he knows or should know that such use may create an unreasonable risk of harm to others, it does not apply when the right to control is absent.

*Id.*, at 725–726, 475 P.2d at 674.

Under Pennsylvania law, a mutual bailment is created where a valet service accepts possession of a patron's keys and parks the vehicle as a service to those gambling on the casino premises. *See, e.g., Taylor v. Philadelphia Parking Authority*, 398 Pa. 9, 156 A.2d 525, 527 (1959) (holding that when attendants collect fees, assume control of cars, park them and issue tickets as means of identifying cars upon redelivery, a bailment is created); *Baione v. Heavey*, 103 Pa.Super. 529, 158 A. 181, 182 (1932) (holding relationship between a parking lot owner and an automobile owner parking a car therein was

that of bailor and bailee). Therefore, we must examine what legal duty, if any, Pennsylvania has imposed upon bailees in their dealings with bailors.

Although no Pennsylvania appellate decision addresses the specific issue of parking attendant/valet liability, a number of other jurisdictions have reached the same conclusion as in *Mills. See Umble v. Sandy McKie and Sons, Inc.*, 294 Ill. App.3d 449, 451–52, 228 Ill.Dec. 848, 690 N.E.2d 157, 158–157 (1998) (holding vehicle repair shop was bailee for hire, and once intoxicated vehicle owner paid for repairs and demanded return of his keys, shop had no discretion to refuse); *Knighten v. Sam's Parking Valet*, 206 Cal.App.3d 69, 75, 253 Cal.Rptr. 365, 367 (1988) (holding valet parking service had no duty to withhold automobiles from an intoxicated patron).

We find the reasoning in *Mills* applicable to this case. The Mohegan Sun valet service, as bailee, was duty bound to surrender control of the decedent's vehicle when it was demanded, notwithstanding the decedent's alleged intoxication. When the decedent requested the return of his vehicle, Mohegan Sun as bailee lost the right to control the car. As Mohegan Sun had no right of control, we cannot find it liable for decedent's actions when the car was returned to his possession. In so finding, we find instructive the Nevada Supreme Court's comment in *Mills*: "The imposition of civil liability in the circumstances here alleged would lead to unforeseeable consequences limited only by the scope of one's imagination. We decline to venture into that wonderland." 86 Nev. at 726, 475 P.2d at 674.

While we sympathize greatly with Moranko's loss, we cannot find that, as a matter of law, Mohegan Sun had the power, let alone the duty, to withhold the decedent's keys. As such, we find the trial court properly entered summary judgment in Mohegan Sun's favor.[3]

Order affirmed. Jurisdiction relinquished.

President Judge GANTMAN, President Judge Emeritus FORD ELLIOTT, and Judges SHOGAN, OLSON, and OTT join the opinion.

Judge MUNDY files a dissenting opinion in which President Judge Emeritus BENDER and Judge DONOHUE join.

## DISSENTING OPINION BY MUNDY, J.:

I respectfully dissent. I agree with the esteemed Majority that the issue in this case is whether Appellee (Mohegan Sun) owed a duty of care to Richard Moranko (Decedent). Majority Opinion at 1112–13. However, I disagree that the trial court properly concluded, as a matter of law for the purpose of summary judgment, that no duty was owed under the facts of this case. I do not believe we need to reach the issue of first impression articulated by the Majority, *i.e.*, what inherent duty, if any, a valet service owes to a visibly intoxicated patron when returning that person's vehicle. Rather, under the particular facts of this case, construed in a light most favorable to Appellant, Faye Moranko, the nonmoving party, as our standard of review requires, I conclude Mohegan Sun as-

---

3. Moranko additionally raises the issue of Mohegan Sun's "Dram Shop liability" on appeal. Appellant's Brief, at 20–21. However, Moranko fails to provide a single legal citation in support of this argument, or to otherwise develop this issue in any meaningful way. "It [is] well settled that a failure to argue and to cite any authority supporting any argument constitutes a waiver of issues on appeal." *Jones v. Jones*, 878 A.2d 86, 90 (Pa.Super.2005). Accordingly, we are constrained to find that Moranko has abandoned this claim on appeal.

sumed such a duty as part of its internal organizational and operational policies. *See E.R. Linde Constr. Corp. v. Goodwin,* 68 A.3d 346, 349 (Pa.Super.2013). I reach my conclusion based on this Commonwealth's adoption of Section 323 of the Restatement (Second) of Torts (1965) (recognizing the existence of a duty to others for voluntarily assumed undertakings).

I believe the Majority's determination that Moranko waived her argument relative to Mohegan Sun's duty on the theory described in Section 323 of the Restatement is unwarranted. In her answer and brief in opposition to Mohegan Sun's motion for summary judgment, Moranko raised and argued the substance of this claim. In her response to the motion, Moranko stated the following. "Given the facts and circumstances of this case, which include but are not limited to, the Mohegan Sun Casino having its own policies and procedures with regard to visibly intoxicated guests, a duty exists in this matter and the same was breached." Plaintiff's Response to Defendant's Motion for Summary Judgment, 8/16/12, at 2, ¶ 10. Furthermore, in her brief in opposition to the motion, Moranko related facts from deposition testimony supporting the existence of a duty based on this theory. Brief in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment, 8/16/12, at 6–12. Moranko concluded, "[d]espite all of the aforementioned polices [sic] and procedures regarding visible intoxication, the employees of the Mohegan Sun on the night in question failed to implement any of them . . . ." Brief in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment, 8/16/12, at 6–12.

When advancing this argument on appeal before the prior panel of this Court, Moranko cited, albeit mistakenly, to Section 324A of the Restatement (Second) of Torts, which, as the Majority notes, pertains to the duty of care owed by a principal to third persons, resulting from the principal's voluntarily undertaken policy or action. Majority Opinion at 1114–15. The substance of Moranko's argument, however, was clearly relevant to an application of Section 323. *See* Moranko's Brief at 15–17.

Thus, the essence of Moranko's argument, that Mohegan Sun owed Decedent a duty of care based on its own internal policies, has been consistently presented to both the trial court and this Court with full opportunity for Mohegan Sun to respond. Our Supreme Court has held that a mere erroneously labeled claim will not require waiver on appeal.

> However, [mistitling] does not change the fact that [Appellant's] theory, under whatever name one might assign to it, was one it never abandoned nor from which it ever retreated. As a result, all parties were aware of the claim and had an opportunity to litigate it. Therefore, [Appellant] has preserved its right to have its claim . . . reviewed on appeal. To hold otherwise would be to elevate form over substance.

*Thatcher's Drug Store of W. Goshen, Inc. v. Consol. Supermarkets, Inc.,* 535 Pa. 469, 636 A.2d 156, 159 n. 5 (1994). For these reasons, I do not consider the argument waived and will proceed to address its merits.

The Majority states, "[t]his internal policy of Mohegan Sun is aimed not at preventing their valets from withholding an automobile from a visibly intoxicated patron, but from keeping visibly intoxicated patrons from gambling on the casino gaming floor." Majority Opinion at 1115. From this, the Majority concludes the policies cannot create a duty on Mohegan Sun toward Decedent. *Id.* I disagree that the

policies at Mohegan Sun were so circumscribed.

During discovery, Appellant deposed Dennis Driscoll, the Director of Security and Transportation for Mohegan Sun. Brief in Opposition to Motion for Summary Judgment, 8/16/12, Exhibit I, N.T., 1/9/12. Appellant questioned Driscoll about the training provided and policies pursued by Mohegan Sun respecting intoxicated patrons. *Id.* at 15–30.

[Attorney for Appellant]. Do [Mohegan Sun security guards] receive training as to spotting an individual who is visibly intoxicated?

[Dennis Driscoll]. Yes.

Q. What kind of training do they receive and who [sic] would they receive that from?

A. Well, they receive it from both, you know, internally with a supervisor but also they attend a class. It's called a RAMP class, Responsible Alcohol Management Program.

Q. So all of your security guards attend the RAMP class?

A. To a degree. We maintained an over 50 percent staffing level that is trained in it. I would say it's probably—it's maintained probably about a 70 to 80 percent.

Q. And why is it important for security guards to have an understanding of the RAMP program and to spot patrons who are visibly intoxicated?

A. The main responsibility—the main reason for that is because the gaming—gaming requires that w[e] deny individuals from entering or remaining present on the gaming floor if they are intoxicated. It's one of the main responsibilities so we have to remove the individual from the gaming floor.

*Id.* at 15–16.

Driscoll further testified about the procedures security personnel are to follow upon noticing an intoxicated patron and the purpose behind those procedures. Driscoll testified specifically as follows.

[Attorney for Appellant]. And what are they to do with a guest who is visibly intoxicated?

[Dennis Driscoll]. Well, the first thing that they do is they will contact Security dispatch—that's the command center—to report it, contact a supervisor and also contact surveillance.

And at that point the officer, we make an attempt to get the individual off the gaming floor, wait for a supervisor to arrive and he will confirm whether the individual appears to be intoxicated. At that time—

. . .

And at that point we explain to the individual that we feel that they are intoxicated and that we would no longer allow them to the gaming floor **and actually the house policy is that we try to get the individual home safely.**

Q. So is it fair to say that it doesn't stop at just telling them they can't gamble anymore?

A. Oh, no.

*Id.* at 17–18 (emphasis added).

Driscoll testified that security personnel endeavor to dissuade intoxicated patrons from driving, attempt to secure alternate transportation, and, if unsuccessful, alert police. *Id.* at 18, 22, 27. Driscoll testified that most instances are handled by security personnel before a patron proceeds to the valet service. However, he also testified that the valet service personnel are instructed to watch for signs of intoxication and report the same to security. *Id.* at 29–30.

Q. When you say stall giving them their car, is it fair to say that you have the—within the valet system you have the power to stall because you're ultimately bringing the car back; right?

A. That's correct.

. . .

Q. Now, we have been talking about signs of visible intoxication. What is your understanding both in what you've been instructed and what you personally instruct on for signs of visible intoxication?

A. The basic signs are somebody who staggers in their walk or somebody who slurs in their speech.

Q. And is it your understanding that the valet runners and the hosts at the guest kiosk center would be instructed on that?

A. They are.

Q. And why is that important for them to be instructed on that?

A. Well, simply because we don't want someone to get in their car that seems to be intoxicated.

*Id.* at 23–24.

In addition to the deposition of Driscoll, Nicholas G. Keeler, a valet employed by Mohegan Sun, was deposed. Brief in Opposition to Motion for Summary Judgment, 8/16/12, Exhibit J, N.T., 5/9/12. In his testimony, Keeler related that he was trained to identify indications of intoxication and to report any encounters to a supervisor. *Id.* at 8–10.

Q. At any point in time when you're being trained by the valet that you're kind of shadowing there, did they ever discuss with you what to do if you encounter a visibly intoxicated patron trying to get their vehicle?

A. Yes. We are supposed to inform our supervisor via radio.

Q. Does that instruction that you just told me, does that come from the valet who is training you?

A. No.

Q. Who does that instruction come from?

A. That's basically from Tecio [Baldoni, a supervisor,] himself. If you see somebody that's intoxicated or any kind of disturbances, you know, in your surroundings, let one of us know.

Q. And that's something that would have been told to you in your initial meeting with Tecio?

A. Yes.

Q. After you were hired?

A. Yes.

Q. What types of things did Tecio tell you to look for in terms of someone who is visibly intoxicated?

A. Stumbling, slurred speech— what's the word I'm looking for—disoriented, you know.

Q. And can that be someone who is actually getting their vehicle where you're the runner and you're about to give the vehicle to them and you see those signs?

A. Yeah.

Q. And your duty, then, is to call the supervisor?

A. First of all, we would ask them, *Are you okay to drive? Do you want to come in for a cup of coffee? We can give you a ride home, call a cab.*

If they argue, there's nothing we can do. You know, if it's that bad where I— they're visibly intoxicated, I would call Tecio.

Q. You would call Tecio?

A. Tecio or another supervisor on duty.

Q. Would you call that supervisor before letting the person get into the vehicle?

A. Yes. If they were visibly intoxicated, yes.

*Id.* (italics in original).

Based on the foregoing, I conclude that the internal policy of Mohegan Sun was not limited to keeping intoxicated patrons from the gambling floor. Rather, the poli-

cy was broader and encompassed its admitted goal to protect intoxicated patrons from driving. To that end, Mohegan Sun employees, including but not limited to valets, were trained and instructed, *inter alia,* to look for indications of intoxication among patrons, advise intoxicated patrons that alternative transportation could be arranged, and if unsuccessful in persuasion, notify the appropriate police department. Thus, Mohegan Sun voluntarily assumed to render security services designed to protect patrons from the dangers of driving while intoxicated.

Pennsylvania, by adopting Section 323 of the Restatement (Second) of Torts, recognizes that a duty may be found in a party who voluntarily assumes an undertaking. *Unglo v. Zubik,* 29 A.3d 810, 813 (Pa.Super.2011). Section 323 specifies as follows.

### § 323 Negligent Performance of Undertaking to Render Services

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

RESTATEMENT (SECOND) OF TORTS (1965) § 323. A plaintiff need not satisfy both Subsections (a) and (b). Establishing either will suffice. *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742, 746 n. 4 (1984).

It is made clear at the outset of [ ] section [323] that the duty to exercise care arises when 'one ... undertakes, gratuitously or for consideration to render services to another which he should recognize as necessary for the protection of the other's person or things ...'. The language of the subsections clearly reveals they were intended not to apply to scope of duty but to causal connection between the physical harm and defendant's failure to exercise reasonable care. Subsections (a) and (b) permit that causal connection to be proved by evidence that defendant's failure increased the risk of such harm as was suffered by plaintiff or by evidence that the harm was suffered because of reliance on the defendant's undertaking.

*Hamil v. Bashline,* 224 Pa.Super. 407, 307 A.2d 57, 61 (1973) (*Bashline I* ).[1]

We agree with the view of the Superior Court majority expressed in *Bashline I* that the effect of § 323(a) is to relax the degree of certitude normally required of plaintiff's evidence in order to make a case for the jury as to whether a defendant may be held liable for the plaintiff's injuries: Once a plaintiff has introduced evidence that a defendant's negligent act or omission increased the risk of harm to a person in plaintiff's position, and that the harm was in fact sustained, it becomes a question for the jury as to whether or not that increased risk was a substantial factor in producing the harm.

*Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280, 1286 (1978).

": .. Thus where it appears How an accident happened and also that the victim

---

1. *Bashline I* was overruled on other grounds by this Court in a subsequent appeal at *Hamil v. Bashline,* 243 Pa.Super. 227, 364 A.2d 1366 (1976) (*Bashline II* ). Our Supreme Court in turn reversed *Bashline II* while approving the analysis of the *Bashline I* Court relative to its interpretation of Section 323(a). *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280, 1286 (1978).

Might have saved himself by taking advantage of a precaution which it has been shown defendant negligently failed to afford, courts have generally let a jury find whether the precaution would in fact have saved the victim." *Id.* at 1287, *quoting* F. Harper and F. James, The Law of Torts, Vol. 2, § 20.2, at 1113 (1956) (emphasis in original).

Of specific relevance to the facts in this case, our Supreme Court has recognized that voluntarily providing a program of security may create a duty under Section 323. *Id.* at 746, 485 A.2d 742 (holding that a landlord who voluntarily established a security program for an apartment complex could create a duty of care to tenants for the proper conduct of that program under Section 323, even though the landlord was not otherwise contractually bound to do so under the lease with tenants).

For the foregoing reasons, I would reverse the trial court's January 4, 2013 order granting summary judgment to Mohegan Sun. I express no opinion relative to the issue of first impression addressed by the Majority, concerning the duty of valet services in general to intoxicated patrons, as I deem the issue moot under the particular facts of this case.

PJE BENDER and Judge DONOHUE join this Dissenting Opinion.